1

2

3

4

5

6

7

8                           IN THE UNITED STATES DISTRICT COURT

9                          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11    MARLON JESSIE BLACHER,              )        No. C 12-4775 RMW (PR)
                                          )
              Petitioner,                 )        ORDER DENYING PETITION FOR
12                                        )        WRIT OF HABEAS CORPUS;
      v.                                  )        DENYING CERTIFICATE OF
13                                        )        APPEALABILITY
      L.S. MCEWEN,                        )
14                                        )
              Respondent.                 )
15    _____)

16

17           Petitioner, a state prisoner proceeding <u>pro se</u>, filed a petition for a writ of habeas corpus

18    pursuant to 28 U.S.C. § 2254.  The court ordered respondent to show cause why the petition

19    should not be granted.  Respondent filed a motion to dismiss, which the court granted in part.

20    Respondent then filed an answer addressing the remaining merits of the petition.  Petitioner has

21    filed a traverse and other pleadings in support of the traverse.[1]  Having reviewed the briefs and

22    _____

23           [1] Petitioner has also filed a myriad of pleadings.  (Docket Nos. 52, 54, 55, 60-62, 64-69,
      74, 76, 78, 79, 81, 83-86, 88-93.)  In general, petitioner alleges that on November 13, 2014,
24    petitioner filed an "affidavit of specific negative averment (in accordance with [Federal Rule of
      Civil Procedure] 9(a) and Bill of Peace."  (Docket No. 52.)  Despite petitioner's erroneous belief
25    that Rule 9(a) applies to this proceeding, petitioner believed that respondent was required to file
      a response within 21 days under Rule 12(a).  (Docket No. 54 at 2.)  Because respondent did not
26    file a response to petitioner's "affidavit," petitioner moved for entry of default.  (Docket No. 54.)
      However, respondent was not required to file a responsive pleading to petitioner's "affidavit"
27    under Rule 12(a).  Petitioner's requests surrounding a response from respondent to petitioner's
      affidavit, as well as an entry of default are thus DENIED.  (Docket Nos. 54, 60, 64-66, 69, 83.)
28

1  the underlying record, the court concludes that petitioner is not entitled to relief based on the

2  claims presented and DENIES the petition.

3                                    **PROCEDURAL HISTORY**

4            On February 6, 2009, petitioner was sentenced to a term of 25 years to life in state prison

5  after being convicted of first degree felony murder, two counts of attempted second degree

6  robbery, and second degree commercial burglary.  On November 12, 2009, petitioner filed an

7  opening brief on direct appeal, and on January 29, 2010, petitioner filed a petition for writ of

8  habeas corpus in the California Court of Appeal.  On November 30, 2010, the California Court

9  of Appeal affirmed the judgment and denied petitioner's petition for writ of habeas corpus.  On

10  January 5, 2011, petitioner filed a petition for review of the California Court of Appeal's

11  decision on direct appeal as well as on the petition for writ of habeas corpus.  On March 16,

12  2011, the California Supreme Court denied both petitions for review.

13          In June 2011, petitioner filed a state habeas petition in Superior Court.  On September 13,

14  2011, the Superior Court denied the petition in a 5-page order.  Petitioner filed the same petition

15  in both the California Court of Appeal and the California Supreme Court.  The petitions were

16  summarily denied on November 30, 2011, and May 16, 2012, respectively.

17          Petitioner filed the instant federal habeas petition on August 29, 2012.

18                                    **FACTUAL BACKGROUND**

19          On July 7, 2007, Magdalena Segura was shopping at Toys R Us and saw petitioner in the

20  electronics department.  (Resp. Ex. 6 at 2.)  She observed that he was acting suspiciously.  (Id.)

21  Taniesha Turner, a store cashier, testified that petitioner was holding what looked like a credit

22  card, and said that he wanted to buy a PlayStation3 ("PS3").  (Id.)  Turner took out a PS3 from a

23  locked case and gave it to petitioner.  (Id.)  Although Turner told petitioner that he needed to pay

24  for the PS3, petitioner walked away.  (Id.)  When Turner started to follow him, petitioner ran out

25  of the door.  (Id.)  The surveillance videotape showed petitioner entering the electronics

26  department at 4:21 p.m., talking with Turner at 4:23 p.m., and running out the door with the PS3

27  at 4:25 p.m.  (Id.)

28

Two employees, Jessie Edmunds and Michael Cantu, ran after Turner in an attempt to assist in the chase. (Id.) During the chase Edmunds saw Segura's husband, Jose Crus, move into petitioner's path and wave his arms back and forth. Edmunds saw Crus move out of petitioner's way as petitioner approached, but petitioner turned toward Crus and punched Crus in the face. (Id.) Crus fell onto his back on the ground while petitioner continued to run. (Id.)

Brian Koch and Landry Walker, who witnessed the events in the parking lot, testified that Crus reached for petitioner before petitioner hit him. (Id.) Eric Jones, the only defense witness, testified that Crus chased petitioner and was reaching for him when petitioner turned and hit him. (Id. at 3.) Walker testified that Crus "crumbled" after he was hit, and Koch saw Crus fall straight back and hit his head on the ground. (Id.) Walker and Jones ran to Crus, found him unconscious, and called 911. (Id.)

Edmunds testified that he chased petitioner for another 25-30 yards and then petitioner reached for something in his pocket and began yelling at Edmunds to stop chasing him. (Id.) Edmunds tried to get the PS3, and petitioner turned around and stretched his arm out as if petitioner were planning to push Edmunds away or punch him. (Id.) Edmunds ran into petitioner and Cantu ran into both of them. (Id.) Petitioner attempted to fight back, but stopped struggling after about 30 seconds. (Id.) The PS3 fell to the grounds and Turner retrieved it. (Id.)

After the police arrived and arrested petitioner, petitioner gave someone else's name and date of birth as his identify but the police ultimately discovered petitioner's identity through a fingerprint search. (Id.) Petitioner was found with $18, but had no wallet or keys. (Id.) An H & R Block MasterCard was on the ground near where petitioner struggled with Edmunds and Cantu. (Id.) The H & R Block card found had been issued to a woman living in Richmond and was valid through September 2008. (Id.)

Crus died four days later. (Id. at 4.) The cause of death was determined to be blunt force injury from a severe impact to the back of his head. (Id.) Petitioner was convicted by a jury of first degree murder of Crus, two counts of attempted robbery of store employees, and burglary of the store, and was sentenced to serve a term of 25 years to life in prison. (Id. at 1.)

**DISCUSSION**

A.   Standard of Review

This court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a state court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  The first prong applies both to questions of law and to mixed questions of law and fact, Williams v. Taylor, 529 U.S. 362, 384-86 (2000), while the second prong applies to decisions based on factual determinations, Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13.  A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if the state court correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." Id. at 413.  The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  Id. at 411.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El, 537 U.S. at 340.

1    In determining whether the state court's decision is contrary to, or involved an

2    unreasonable application of, clearly established federal law, a federal court looks to the decision

3    of the highest state court to address the merits of a petitioner's claim in a reasoned decision.

4    LaJoie v. Thompson, 217 F.3d 663, 669 n. 7 (9th Cir. 2000).

5    B.    Petitioner's Claims

6        As grounds for federal habeas relief petitioner claims that: (1) trial counsel was

7    ineffective; (2) the evidence was insufficient to convict petitioner of first degree murder on a

8    felony murder theory and the evidence was insufficient to convict petitioner of the attempted

9    robbery of Turner; (3) the trial court gave incomplete jury instructions on second degree implied

10   malice murder; and (4) petitioner received an unfair trial because the jury observed him in

11   physical restraints.

12       1.    Ineffective assistance of counsel

13       Petitioner claims that counsel rendered ineffective assistance by not communicating with

14   him and failing to answer petitioner's questions; failing to uphold petitioner's speedy trial rights;

15   failing to acquire newspaper articles about Crus' death in order to impeach the Crus' widow's

16   knowledge of what had happened; failing to call Michael Stevens, a favorable defense witness;

17   failing to file a Section 995 motion to set aside one of the charges; and conceding that the use of

18   the MasterCard was a ruse.[2]

19       In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, petitioner

20   must establish two things. First, he must establish that counsel's performance was deficient, i.e.,

21   that it fell below an "objective standard of reasonableness" under prevailing professional norms.

22   Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Second, he must establish that he was

23   prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that,

24   but for counsel's unprofessional errors, the result of the proceeding would have been different."

25

26       [2]  Respondent re-asserts his claim that the ineffective assistance of counsel claim is
27   procedurally barred, which the court rejected in its September 30, 2014, order. The court
     declines to address the issue of whether this claim is procedurally barred because the court
28   concludes that the ineffective assistance of counsel claim has no merit.

1    Id. at 694.  A reasonable probability is a probability sufficient to undermine confidence in the

2    outcome.  Id.

3              A.       Failure to communicate

4              Petitioner alleges that he and counsel had communication problems and counsel failed to

5    respond to petitioner's inquiries.  An attorney has a duty to consult with his client regarding

6    "important decisions," including questions of overarching defense strategy.  Strickland, 466 U.S.

7    at 688.  That obligation does not require counsel to obtain the defendant's consent to "every

8    tactical decision," however.  Taylor v. Illinois, 484 U.S. 400, 417-18 (1988).  But certain

9    decisions regarding the exercise or waiver of basic trial rights are of such moment that they

10   cannot be made for the defendant by a surrogate.  A defendant has "the ultimate authority" to

11   determine "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an

12   appeal."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  That obligation does not, however, require

13   counsel to obtain the defendant's consent to "every tactical decision" made.  Taylor v. Illinois,

14   484 U.S. 400, 417-18 (1988).  Neither is counsel required to pursue any defense or make any

15   colorable argument that a client desires, as the right to effective assistance of counsel requires

16   "the ability of counsel to present the client's case in accord with counsel's professional

17   evaluation."  Jones, 463 U.S. at 751.

18             Here, petitioner does not specify in what ways counsel's communication failed, or to

19   what inquiries counsel refused to respond.  As a practical matter, petitioner lends no facts to

20   support a conclusion that counsel's performance was deficient.  Similarly, without such facts or

21   specific argument, there is no evidence to suggest that any failure to communicate prejudiced

22   petitioner.  Even assuming that counsel's failure to communicate was deficient, the verdicts

23   against petitioner were supported by the substantial evidence of witness testimonies.

24             B.       Failure to uphold speedy trial rights

25             Petitioner argues that counsel failed to uphold his speedy trial rights even after he asked

26   her to preserve his right to a speedy trial, and told her of his belief that he would be

27   disadvantaged by not exercising his right to a speedy trial.  (Pet. at 6.)  Petitioner states that

28   counsel responded that she "must waive" his speedy trial right.  (Id.)

1    Here, the record supports the presumption that trial counsel provided reasonable,

2    professional assistance.  There is no indication in the record that petitioner ever asserted his right

3    to a speedy trial, or objected to his counsel's waiver of time.  But even if petitioner had objected

4    to counsel's request to waive petitioner's right to a speedy trial, under Supreme Court precedent,

5    "delay caused by the defendant's counsel is also charged against the defendant."  Vermont v.

6    Brillon, 556 U.S. 81, 90-91 (2009).  Likewise, under California law, a defense counsel's request

7    for a continuance over a defendant's objection is treated as a defense time waiver, where the

8    defense counsel was "pursuing his client's best interests in a competent manner."  People v.

9    Johnson, 26 Cal.3d 557, 567 (1980).

10    In addition, petitioner has not explained how his defense was prejudiced by the delay,

11    and this court discerns no prejudice to petitioner from the record.  In sum, petitioner has not

12    shown that defense counsel acted below an objective standard of professional competence by

13    waiving petitioner's right to a speedy trial, nor has petitioner shown that he has been prejudiced

14    by any failure to begin trial earlier.

15                    C.    Failure to acquire newspaper articles

16    Petitioner claims that counsel rendered ineffective assistance by failing to obtain "certain

17    newspaper articles" to introduce into evidence at trial.  (Pet. at 6-7.)  These articles purportedly

18    contained statements from Crus' family around the time of the crime, and contained the "general

19    consensus of the family members" that they lacked any personal knowledge of the specifics of

20    the crime.  (Id. at 7.)  Petitioner alleges that, had counsel introduced these articles, the articles

21    would have created doubt in the minds of the jurors that Crus' widow could testify about specific

22    facts at trial.

23    Even assuming that counsel's performance was deficient in failing to obtain the articles,

24    and even assuming that the articles would have been admissible at trial, petitioner has failed to

25    demonstrate prejudice.  Specifically, petitioner has not shown that any statements from Crus'

26    family regarding the murder included any statements from Crus' widow.  Moreover, it is

27    unlikely that the articles would have detracted from the testimonies of the eyewitnesses who saw

28    petitioner run from the store with the PS3 and, as he was being chased, hit Crus, causing Crus to

1   fall to the ground and die.  Thus, petitioner has failed to show that any deficiency in failing to

2   obtain the newspaper articles resulted in prejudice.

3                   **D.**      **Failure to call witness Michael Stevens**

4          Petitioner claims that counsel failed to present Michael Stevens as a favorable defense

5   witness.  (Pet. at 7.)  Michael Stevens was a business associate of petitioner's, and would have

6   testified that the owner of the H & R Block MasterCard was Lindsey Silva, who was in a

7   relationship with petitioner.  (Resp. Ex. 6 at 22.)  Presumably, petitioner believed Stevens'

8   testimony would imply that petitioner had Silva's permission to possess the MasterCard and

9   refute the inference that petitioner stole the MasterCard .

10          The California Court of Appeal rejected petitioner's claim, concluding that evidence

11   tending to show that petitioner had permission to use the card would not have "shed any

12   significant light on [petitioner's] intentions when he entered the store" and how petitioner came

13   to obtain the card was not a material issue.  (Resp. Ex. 6 at 24.)

14          The court agrees.  Even if Stevens had been permitted to testify, it was not reasonably

15   probable, based on the weight of the evidence from witness testimonies, that the outcome of trial

16   would have been different.

17                   **E.**      **Failure to file Section 995 motion**

18          Petitioner claims that counsel should have filed a Section 995 motion to set aside the

19   information.  (Pet. at 8.)  Petitioner does not explain how or why a Section 995 motion to set

20   aside the information would have been successful.  As respondent notes, it appears that

21   petitioner's claims are an attempt to challenge the sufficiency of the evidence to support a

22   robbery-felony murder charge.  (Id.)

23          In order to establish prejudice from failure to file a motion, petitioner must show that (1)

24   had his counsel filed the motion, it is reasonable that the trial court would have granted it as

25   meritorious, and (2) had the motion been granted, it is reasonable that there would have been an

26   outcome more favorable to him.  See Wilson v. Henry, 185 F.3d 986, 990 (9th Cir. 1999).

27          Here, without any argument as to whether it would be reasonable for the trial court to

28   grant such a motion, petitioner has not satisfied his burden of demonstrating that counsel

1   rendered deficient performance in failing to file the motion, or that petitioner was prejudiced

2   from the failure to do so.  To the extent petitioner is challenging the prosecutor's reliance upon

3   the felony murder theory when the magistrate judge found no probable cause to support such a

4   theory at the preliminary hearing, this court has already rejected petitioner's claim in its

5   September 30, 2014, order.  (Docket No. 48 at 12.)  To the extent petitioner is challenging the

6   sufficiency of the evidence of a felony murder conviction, the court discusses this claim below.

7   Accordingly, petitioner has failed to demonstrate prejudice.

8                F.      Conceding that the use of the MasterCard was a ruse

9          Petitioner claims that during closing argument, counsel conceded that petitioner used the

10   MasterCard as a ruse.  During closing argument, defense counsel attempted to paint a picture

11   that petitioner did not form the intent to steal until after he was already in the store.  (4 RT 535.)

12   Defense counsel admitted that the ruse was not well-thought out, but that petitioner had thought

13   that perhaps Turner would tell petitioner that he could pay at the front, and petitioner would "just

14   happen to wander outback out the door."  (Id.)  If the jury accepted this explanation, petitioner

15   would not have been convicted of burglary.

16          Tactical decisions of trial counsel deserve deference when: (1) counsel in fact bases trial

17   conduct on strategic considerations; (2) counsel makes an informed decision based upon

18   investigation; and (3) the decision appears reasonable under the circumstances.  See Sanders v.

19   Ratelle, 21 F.3d 1446, 1456 (9th Cir. 1994).  Whether counsel's actions were indeed tactical is a

20   question of fact considered under 28 U.S.C. § 2254(d)(2); whether those actions were reasonable

21   is a question of law considered under 28 U.S.C. § 2254(d)(1).

22          In light of the strong evidence that supported a conclusion that petitioner intended to steal

23   the PS3, it was reasonable for counsel to try to convince the jury that the intent to steal did not

24   occur until petitioner was in the store, thus precluding a burglary conviction.  Moreover,

25   counsel's "ruse" theory did not undermine confidence in the outcome of the proceeding or cause

26   prejudice to petitioner.

27          Accordingly, petitioner is not entitled to habeas relief for his ineffective assistance of

28   counsel claims.

1          2.      Sufficiency of the evidence

2          Petitioner claims that the evidence was insufficient to convict him of first degree felony

3    murder during the commission of a robbery or attempted robbery, and the evidence was

4    insufficient to convict him of the attempted robbery of Turner.  (Pet. at 14-18.)  Specifically,

5    petitioner argued that he did not employ force or fear against anyone "with a possessory interest"

6    in the PS3 when he obtained the PS3, and he only employed force or fear against a store

7    employee after he struck Crus, and after Turner had regained possession of the PS3.  (Id. at 14.)

8          The California Court of Appeal rejected petitioner's claim.  It stated that the test for

9    determining whether a murder occurs during a felony to satisfy the felony-murder rule is whether

10   the killing and the felony are part of one continuous transaction.  (Resp. Ex. 6 at 9.)  Moreover,

11   such a determination is a question of fact.  (Id. at 10.)  The court concluded that the record was

12   sufficient for the jury to find that an attempted robbery occurred when petitioner punched Crus

13   while store employees chased petitioner in an effort to reclaim the PS3.  (Id. at 11-12.)  "An

14   attempted robbery requires a specific intent to commit robbery and a direct, ineffectual act

15   (beyond mere preparation) toward its commission.  A specific intent to rob can be inferred even

16   when no force or fear is employed."  (Id. at 12.)  The California Court of Appeal concluded that

17   an intent to steal through force or fear could be inferred based upon petitioner's actions.  (Id. at

18   12-13.)  Specifically, an intent to use force against the store employees could be inferred because

19   petitioner assaulted Crus, who was standing in the way of petitioner's escape, and thus,

20   petitioner was equally prepared to assault the store employees pursuing him if they interfered

21   with the asportation of the PS3.  (Id. at 14.)  Petitioner "had exhibited an overt intent to use force

22   against anyone, including the employees, who were trying to stop him, which supported a

23   conviction of attempted robbery."  (Id.)

24         A federal court reviewing collaterally a state court conviction does not determine whether

25   it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982

26   F.2d 335, 338 (9th Cir. 1992); see, e.g., Coleman v. Johnson, 132 S. Ct. 2060, 2065 (2012) (per

27   curiam) ("the only question under Jackson [v. Virginia, 443 U.S. 307 (1979)] is whether [the

28   jury's finding of guilt] was so insupportable as to fall below the threshold of bare rationality").

1   The federal court "determines only whether, 'after viewing the evidence in the light most

2   favorable to the prosecution, any rational trier of fact could have found the essential elements of

3   the crime beyond a reasonable doubt.'"  Payne, 982 F.2d at 338 (quoting Jackson, 443 U.S. at

4   319).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt,

5   has there been a due process violation.  Jackson, 443 U.S. at 324.

6          In essence, petitioner is not arguing that the facts do not support the elements of the

7   crimes.  Rather, petitioner is arguing that the state court's interpretation of what each crime

8   requires is erroneous.  However, that the facts do not support petitioner's interpretation of what

9   the state law requires for a conviction of felony murder or attempted robbery is not at issue here.

10  A federal court sitting in habeas review is generally bound by a state court's interpretation of

11  state law.  See Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008).  Thus, based on the California

12  Court of Appeal's interpretation of the elements required to support felony murder during the

13  commission of an attempted robbery, and the attempted robbery of Turner, the state court's

14  conclusion that the evidence supported a finding of each element was not objectively

15  unreasonable.  See Boyer v. Belleque, 659 F.3d 957, 964-965 (9th Cir. 2011).

16          3.      Jury instructions

17          Petitioner claims that the trial court erred by not instructing the jury on second degree

18  murder (CALJIC Nos. 8.31 or 8.51), nor did the trial court's instruction on the definition of

19  implied malice (CALJIC No. 8.11) inform the jury that a finding of implied malice could support

20  a finding of second degree murder.  (Pet. at 19.)

21          The California Court of Appeal rejected this claim.  It stated that although it would have

22  been preferable for the trial court to have instructed the jury on second degree murder, the

23  omission did not affect the jury verdict, and in light of the instructions as a whole, the jury would

24  not have believed that implied malice murder could support a conviction of first degree murder.

25  (Resp. Ex. 6 at 19-20.)  "Since the jury was apprised that murder was a killing committed either

26

27

28

1  with malice or during the specified felonies (CALJIC No. 8.10)[3], and that felony murder was

2  first degree murder (CALJIC No. 8.21)[4], the jury would likely have deduced that second degree

3  murder was a killing with implied malice – no other option was presented under the instructions

4  as a whole." (Id.)  The appellate court also noted that the closing arguments of counsel

5  appropriately distinguished between implied malice - second degree murder and first degree

6  felony murder.  Finally, the court concluded that because the jury convicted petitioner of first

7  degree murder, the jury would never have gotten the opportunity to reach the issue of whether

8  petitioner harbored an implied malice sufficient to support the lesser offense of second degree

9  murder.  (Id. at 20.)

10      To obtain federal collateral relief for errors in the jury charge, a petitioner must show that

11  the ailing instruction by itself so infected the entire trial that the resulting conviction violates due

12  process.  See Estelle v. McGuire, 502 U.S. 62, 72 (1991).  In order to show a due process

13  violation, the defendant must show both ambiguity and a "reasonable likelihood" that the jury

14  applied the instruction in a way that violates the Constitution, such as relieving the state of its

15  burden of proving every element beyond a reasonable doubt.   Waddington v. Sarausad, 555 U.S.

16  179, 190-191 (2009) (internal quotations and citations omitted).  A determination that there is a

17  reasonable likelihood that the jury has applied the challenged instruction in a way that violates

18

19

20      [3]  A portion of this instruction specified: "The defendant is accused in Count 1 of having

21  committed the crime of murder, a violation of section 187 of the Penal Code.  [¶] Every person
    who unlawfully kills a human being with malice aforethought or during the commission or

22  attempted commission of robbery or burglary is guilty of the crime of murder in violation of
    Penal Code section 187."

23

24      [4]  The jury was instructed on first degree felony murder (CALJIC No. 8.21) as follows:

25  "The unlawful killing of a human being, whether intentional, unintentional or accidental, which
    occurs during the commission or attempted commission of the crime of robbery or burglary is

26  murder of the first degree when the perpetrator had the specific intent to commit that crime at the
    time of the killing.  [¶] The specific intent to commit robbery or burglary and the commission or

27  attempted commission of those crimes must be proved beyond a reasonable doubt.  [¶] In law, a
    killing occurs during the commission or attempted commission of a felony, so long as the fatal

28  blow is struck during its course, even if death does not then result."

1  the Constitution establishes only that an error has occurred.[5]  See Calderon v. Coleman, 525 U.S.

2  141, 146 (1998).  If an error is found, the court also must determine that the error had a

3  substantial and injurious effect or influence in determining the jury's verdict, see Brecht v.

4  Abrahamson, 507 U.S. 619, 637 (1993), before granting relief in habeas proceedings.  See

5  Calderon, 525 U.S. at 146-47.

6      As an initial matter, the court notes that the Ninth Circuit has held that the failure of a

7  state trial court to instruct on lesser-included offenses in a non-capital case does not present a

8  federal constitutional claim.  See Solis v. Garcia, 219 F.3d 922, 929 (9th Cir. 2000).  In addition,

9  this court cannot say that the Court of Appeal's conclusion that there was no reasonable

10  likelihood that the jury applied the instructions in a way that violated the Constitution was an

11  unreasonable application of clearly established Supreme Court law.  Further, even assuming

12  there was constitutional error, because the jury found petitioner guilty of first degree felony

13  murder, based on the instructions as given, it could not have reached the issue of whether there

14  was evidence of malice.  Thus, any error would not have had a substantial or injurious effect on

15  the jury's verdict.

16      Accordingly, petitioner is not entitled to habeas relief on this claim.

17      4.    Physical restraints

18      Petitioner claims that during trial, he was escorted from the holding cell to the courtroom

19  in shackles where jurors could regularly see him in physical restraints.  (Pet. at 22-23.)

20  Respondent argues that the shackling claim is procedurally barred because the California Court

21  of Appeal rejected it as waived, with a citation to People v. Tuilaepa, 4 Cal. 4th 569, 583 (1992).

22  (Resp. Ex. 6 at 26.)

23      A federal court will not review questions of federal law decided by a state court if the

24  decision also rests on a state law ground that is independent of the federal question, and adequate

25  to support the judgment.  Coleman v. Thompson, 501 U.S. 722, 729-30 (1991).  Under California

26

27

28      [5]A "reasonable likelihood" is lower than the "more likely than not" standard but higher than a mere "possibility."  Polk v. Sandoval, 503 F.3d 903, 910 (9th Cir. 2007).

1  law, it is well settled that "the use of physical restraints in the trial court cannot be challenged for

2  the first time on appeal," and the failure to make an "appropriate and timely objection" to a

3  criminal defendant being required to remain in physical restraints forfeits the claim on appeal.

4  People v. Ward, 36 Cal. 4th 186, 206 (2005) (quoting Tuilaepa, 4 Cal. 4th at 583); see also

5  Audette v. Sisto, 2009 WL 224906, at *3-4 (E.D. Cal. Jan. 29, 2009) (finding shackling claim

6  procedurally defaulted based on state court's citation to Tuilaepa).  Here, in rejecting petitioner's

7  claim on direct appeal, the Court of Appeal clearly and expressly invoked the foregoing

8  procedural bar when it concluded that petitioner failed to raise this claim in trial court.

9         The failure to comply with a state's procedural rule results in a default that bars federal

10  consideration of the issue, unless petitioner can demonstrate both "cause" for the default and

11  actual "prejudice" as a result of the alleged violation of federal law.  Coleman, 501 U.S. at 750-

12  51.  Petitioner has not purported to show either, and therefore, petitioner has failed to overcome

13  the procedural default.  Nevertheless, even assuming that this claim was not procedurally

14  defaulted, federal habeas relief would not be warranted because the claim fails on the merits.

15        The Constitution forbids the use of shackles (or other physical restraints) visible to the

16  jury absent a trial court determination, in the exercise of its discretion, that the use is justified by

17  an essential state interest – such as the interest in courtroom security – specific to the defendant

18  on trial.  Deck v. Missouri, 544 U.S. 622, 624 (2005).   However, a jury's brief or inadvertent

19  glimpse of a defendant in physical restraints outside of the courtroom does not presumptively

20  warrant habeas relief.  See Williams v. Woodford, 384 F.3d 567, 593 (9th Cir. 2004).  For

21  example, in Wharton v. Chappell, 765 F.3d 953, 963 (9th Cir. 2014), the Ninth Circuit found that

22  although some jurors viewed the defendant being transported in handcuffs in the public areas of

23  the courthouse, it did not deprive the defendant of a fair trial because the defendant failed to

24  demonstrate actual prejudice.

25        Similarly here, petitioner offers no facts or argument demonstrating that the some jurors'

26  observation of him being transported in physical restraints had a substantial or injurious effect on

27  the verdict.  As such, petitioner is not entitled to habeas relief on this claim.

28

**CONCLUSION**

The petition for a writ of habeas corpus is DENIED.

The federal rules governing habeas cases brought by state prisoners require a district court that denies a habeas petition to grant or deny a certificate of appealability ("COA") in its ruling.  Petitioner has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights, or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong.  <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).  Accordingly, a COA is DENIED.

The clerk shall terminate all pending motions, enter judgment, and close the file.

IT IS SO ORDERED.

DATED:  9/22/2015

RONALD M. WHYTE
United States District Judge